COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Lorish and White
Argued at Salem, Virginia


SAMANTHA MAXINE STILWELL

                                                            OPINION BY
v.        Record No. 0884-23-3              JUDGE DORIS HENDERSON CAUSEY
                                                          FEBRUARY 27, 2024

COMMONWEALTH OF VIRGINIA


**PUBLISHED**

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

J. Mark Cook for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


By final order of the Circuit Court of the City of Lynchburg, Samantha Maxine Stilwell was

convicted of felony assault and battery under Code § 18.2-57(B) and sentenced to 2 years of

incarceration, with 1 year, 11 months, and 15 days suspended.  On appeal, Stilwell argues that the

evidence failed to prove that she assaulted her victim based on her victim's race.  For the following

reasons, we affirm the court below.

BACKGROUND[1]

On April 17, 2021, Stilwell was shopping with her family at Walmart in Lynchburg

where Carol Jennings and Gloria Thompson, two Black employees, were working at that time.

Stilwell went to the self-checkout with two carts full of items.  Jennings and Thompson were

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the
light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*,
295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).  On appeal,
we discard any of appellant's conflicting evidence, and regard as true all credible evidence
favorable to the Commonwealth and all inferences that may reasonably be drawn from that
evidence. *Id.* at 473.

stationed at the post-transaction side of the self-checkout aisles having an amusing discussion. Jennings and Thompson became aware of Stilwell as she approached one of the self-checkout stations when they heard her arguing with the man that accompanied her. Then Stilwell "just start[ed] screaming." Stilwell screamed, "What is these black bitches laughing at, these black [N-word] laughing at me, I know they aint laughing at me."[2] Stilwell continued to make statements towards the two employees, calling them "black bitches" and "black [N-word]."

Jennings and Thompson ignored Stilwell as they were uncertain if Stilwell was addressing them. From Thompson's post, she watched Stilwell roughly throw items into plastic bags. After Stilwell unsuccessfully bagged several items, Stilwell stated "you know, I can't stand these fucking [N-word]. I hate you fucking [N-word]. Yeah, I said it, you fucking [N-word]." Stilwell continued, "I wish I had something to throw at these black bitches." Suddenly, Stilwell picked up a hand scanner and threw it at the women, hitting Jennings on the shin. The two employees were escorted away from the area by a loss prevention officer. Stilwell hurried out of the store with her children. Jennings suffered a shin contusion which needed treatment.

The next day, Lynchburg City Police Officer Boras arrested Stilwell and interviewed her about the incident. Stilwell admitted that she called Jennings and Thompson "black bitch" but denied saying the n-word. When pressed on the issue, Stilwell stated, "so what, maybe I did call her a [N-word]," before recanting.

Stilwell testified on her own behalf at trial. Stilwell admitted throwing the hand-held scanner at Jennings and calling her a "black bitch," but she denied calling her the "n word." She

---

[2] "[T]his Court recognizes that '[g]iven American history, . . . the [N-word] . . . can have a highly disturbing impact on the listener.'" *Washington v. Commonwealth*, 75 Va. App. 606, 620 (2022) (citing *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004)). "This word is 'loaded with a legacy of . . . racial hatred.'" *Id.* (quoting *United States v. Bartow*, 997 F.3d 203, 209 (4th Cir. 2021)).

claimed that while she was checking out, Jennings and Thompson were looking in her direction and laughing. Stilwell testified that when she asked the employees what was funny, one of the women stated "your mama." Jennings and Thompson also testified at trial regarding the incident. During the trial, the Commonwealth played and moved into evidence security video showing what occurred, though the videos had no sound. In finding Stilwell guilty, the trial court stated, "The words that you state right before you take your action I think are more indicative of what the motive was for doing it." The court concluded "But the other statements were directed to them and they were hateful, they were derogatory and I think they also establish the motive for your actions because . . . simply put, I don't think they would have been picked out except for any other reason." On appeal, Stilwell argues that the evidence failed to prove that she assaulted Jennings because of her race.

ANALYSIS

Stilwell concedes that she assaulted Jennings when she threw the self-checkout hand scanner at her. Even so, Stilwell argues that there was a reasonable explanation for her battery of Jennings that did not involve Jennings's race, that Stilwell perceived that Jennings and Thompson were laughing at her. Stilwell asserts that because there was a reasonable hypothesis of innocence that did not involve race, the trial court erred when it found the evidence sufficient for the felony enhancement. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204,

- 3 -

228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Code § 18.2-57 makes assault and battery a Class 1 misdemeanor, but subsection (B) of that statute contains an enhancement elevating that offense to a Class 6 felony with a minimum term of confinement of six months "if a person intentionally selects the person against whom an assault and battery resulting in bodily injury is committed because of his race, religious conviction, gender, disability, gender identity, sexual orientation, color, or national origin."

The principal case on Code § 18.2-57's hate crime enhancement is *Carfagno v. Commonwealth*, 39 Va. App. 718 (2003).  In *Carfagno*, the defendant walked by Eunice Wilson and her mother, Gertrude Smith, while they were at a free-standing phone booth.  *Id.* at 723. Initially, Carfagno passed the women without incident but he returned and began speaking to the women.  *Id.*  Carfagno asked Wilson if she knew why he had returned.  *Id.*  After Wilson said no, Carfagno replied, "I'm backing [the wheelchair] up so you all [sic] black bitches can see what I got."  *Id.*  Carfagno continued to make statements to the women, calling them "black bitches and [N-word]," and stating, "I don't like you all [sic] black bitches no way."  *Id.*  Without warning, Carfagno began to hit both women and eventually pushed each to the ground.  *Id.*  Smith chipped a bone in her back that punctured her intestines, and Wilson suffered a knot on her elbow and a scraped pinky finger.  *Id.*  On appeal, this Court held that Carfagno's use of racial epithets before

- 4 -

and during his unprovoked assault of Smith and Wilson was sufficient circumstantial evidence to prove that Carfagno assaulted his victims because of their race. *Id.* at 725.

Taking the evidence as a whole, we cannot find that the trial court erred in finding that Stilwell's actions together with her words excluded her "reasonable hypothesis" that Stilwell targeted the victims simply because they were laughing at her. As both Walmart employees testified, Stilwell's initial comments toward them included their race, "I know these black bitches aint laughing at me." Both employees also testified to Stilwell yelling things such as "I wish I had something to throw at these black bitches," and "I cant stand these fucking [N-word]. I hate you fucking [N-word]. Yeah I said it, you fucking [N-word]." Stilwell admitted to Officer Boras that she called the victim a "black bitch." When questioned by Officer Boras about her use of the n-word, she said, "so what, maybe I did call her a [N-word]." The trial court's reasonable inferences from the evidence established beyond a reasonable doubt that Stilwell had selected her victim based on her race. This conclusion was not plainly wrong or without evidence to support it.

To the extent that Stilwell argues that she assaulted the victim because she believed that the victim was laughing at her and not because of the victim's race, this argument also fails. Stilwell testified that she threw the scanner at them because she thought they were laughing at her and talking about her, not because of their race. The trial court found this whole line of argument to be a "red herring," making the factual finding that nothing occurred that would have caused Jennings and Thompson to be laughing at Stilwell. Even still, as the court concluded even if the laughing got the defendant's attention, it was nothing more than "an excuse, a justification for [Stilwell's] conduct."

Finally, this Court held in *Carfagno* that Carfagno's use of racial epithets before and during his unprovoked assault of Smith and Wilson was sufficient circumstantial evidence, when

combined with the fact that the attack was unprovoked, to prove that Carfagno assaulted his victims because of their race. *Carfagno*, 39 Va. App. at 725.[3] Here, too, the racial epithets combined with the unprovoked nature of the attack support the same conclusion. As the trial court noted, "I recall seeing the video and it simply looks like an unprovoked racial issue that you had with these individuals who, you know, were standing at some distance from you and had no interaction with you." Although the employees were laughing, there was no evidence that the employees were laughing at Stilwell, only Stilwell's testimony that she believed the women were laughing at her, which the trial court discredited. Like *Carfagno*, the trial court also noted that there was no provocation for Stilwell's actions. Laughter is not justification for a battery. Stilwell's subjective perception of the situation does not excuse her unprovoked derogatory remarks or aggressive behavior and does not require this Court to find, in light of the evidence, that she did not choose her victim because she was in fact a Black woman.

CONCLUSION

The evidence and the court's findings make it clear that Stilwell assaulted Jennings because of her race. The trial court's findings were not plainly wrong or without evidence to support them.

*Affirmed.*

---

[3] *Carfagno* does not establish that the use of racial epithets alone is sufficient to convert a simple assault into a hate crime. Rather, the Court noted that in reaching its decision, it was "guided by" the decisions of courts in other jurisdictions that "have found the use of racial epithets constitutes sufficient evidence of the speaker's racial motivation in committing the crime." 39 Va. App. at 723. But the Court's holding rested on the use of epithets *and* the fact that the attack was unprovoked. *See id.* at 725 ("After using a racial epithet to initiate a conversation with the women, Carfagno proceeded to assault [the victims]. Carfagno continued to hurl racial epithets at the women during the assault, which was unprovoked.").